DAVID GREEN, administrator of William Stadden, deceased, appellant, *vs.* GEORGE MANN, appellee.

*Appeal from La Salle.*

| 11 | 613 |
| 50a | 253 |
| 11 | 613 |
| 54a | 438 |
| 11 | 613 |
| 110a | 526 |

A rented to B a mill, for three years, and agreed to put in operation two additional runs of stones, with machinery, bolts, &c., which was defectively done. B brought suit, alleging a breach of this agreement. Held, that the true measure of damages in this case was, the value of the use of that portion of the machinery which A had contracted to furnish, and which, by reason of his failure to do, B was unable to enjoy.

Mann brought suit in the La Salle Circuit Court against Green, as administrator of William Stadden, alleging that by a certain agreement, in writing, between himself and Stadden, on the 22d August, 1844, Stadden rented to Mann his flouring mill, for the term of three years, Stadden binding himself " to put into operation two more runs of stones, with the necessary machinery, for manufacturing flour, with a bolt for country work or middlings, within the first year—the work to be done as substantial and with sufficient power to grind as fast as those already at work, &c., &c.," which it was averred he had neglected to do, except in an imperfect and incomplete manner; and damages were claimed for the breach of contract. Several pleas were filed, and the issues came on for trial before Spring, Judge, and a jury, at November term, 1849, of the La Salle Circuit Court. A verdict and judgment were rendered for

$250 damages. The defendant below prayed this appeal. The points raised are explicitly stated in the opinion of the Court.

N. H. Purple and Glover & Cook, for appellant.

E. S. Leland, for appellee.

Opinion by Mr. Justice Trumbull :

Stadden rented to Mann his flouring mill, for three years, for which the latter agreed to pay. $1,200 rent, for the first, and $1,700, for each subsequent year. The lease contained an agreement by Stadden, " to put into operation two more runs of stones, with the necessary machinery, for manufacturing flour, with a bolt for country work or middlings, within the first year— the work to be done as substantial and with sufficient power to grind as fast as those already at work." Mann brought suit, alleging a breach of the foregoing stipulation for improvements. The evidence shows, that Stadden put the two additional run of stone into the mill, but it also shows, that there was some defect in the bolt, and that the main wheel was not strong enough to drive more than one of the new run of stone at a time ; also, that the deficiency, both in the wheel and bolt, could have been repaired at an expense not exceeding one hundred and twenty dollars. The jury found a verdict for the plaintiff below; and the only point in controversy is as to the measure of damages.

The Court instructed the jury, that if Stadden did not comply with his contract, " they should allow the plaintiff such an amount of damages as are the immediate consequence of nonperformance on the part of said Stadden, and such as would probably have been contemplated by the parties as the consequence of said non-performance ;" and refused to instruct, " that the plaintiff's damages would only be the necessary expenses of repairing said wheel and bolt, the value of the use of the machinery which would be suspended by the process of repairing, the necessary inconvenience and trouble attending the same, and the interest upon such necessary expenditures, provided the jury shall also believe, from the evidence, that such repairs could have been made at a small expense, compared to the cost of the whole machinery, or by the exercise of reasonable exertion on the part of the plaintiff."

The instruction refused by the Court assumes that it was the duty of Mann to have perfected the improvements which Stadden had undertaken to make, provided it could have been done at a small expense, compared to the cost of the whole work; and several authorities are referred to, as sustaining this position. We have examined the cases referred to, and do not think they sustain the position contended for. In the case of Thompson *vs.* Shattuck, 2 Met., 615, the plaintiff brought suit on an agreement to keep one half of a mill-dam in repair. The Court held, that as plaintiff was bound to repair one half the dam, he had the right, upon the refusal of the other party to aid, to make the whole repairs at once. If he delayed it was his own fault; and that having gone on and made the repairs, he was only entitled to recover half the expense of making them. The case of Blanchard *vs.* Ely, 21 Wend., 342, decides, that in an action to recover the stipulated price for building a steamboat, the jury were only authorized to deduct from the amount due the plaintiff, such sum as would be equal to the expenses necessarily incurred by the defendants in remedying such defects as existed in the boat or machinery. In this case, the defendants had accepted the boat before she was entirely finished, and at their own expense had gone on and made the necessary alterations. Neither of these cases is like the present, for in both the party seeking to recover damages for the breach of contract had gone on and made the repairs which the other had contracted to do. Not so in this case. Mann did not proceed to remedy the defects which existed by reason of a failure on the part of Stadden to perform his contrrct. Had he done so, it is probable that he could only have recovered the expense he was put to in remedying the defects. But he was under no obligation to perform Stadden's contract for him, and not having done so, it is right that Stadden's estate should pay the damages immediately resulting from the breach of contract. In the case in 2 Metcalf, the plaintiff was equally bound with the defendant to repair the dam. Not so here. As a general rule, a tenant has no authority to make permanent repairs, without his landlord's consent, and charge him with the expense. We do not mean to say, that when a party, entitled to the benefit of a contract, unreasonably and through gross negligence, omits to do some trifling act, which would have prevented extensive damage, that

he is not bound to do so. Such is the case instanced in the books, where a man enters his neighbor's field unlawfully, and leaves the gate open. If, before the owner knows it, cattle enter and destroy the crops, the trespasser is responsible. But if the owner sees the gate open, and wilfully or obstinately, or through gross negligence, leaves it open all summer, and cattle get in, it is his own folly. It may be difficult, in some cases, to determine what is a trifling defect, which a party, acting in good faith, ought to remedy, when his neglect to do so will occasion considerable damage; yet this is clearly not such a case. The evidence tended to show that the expense of remedying the defects in the wheel and bolt would have been $120—no trifling sum; and to have given the instruction asked, in such a case, would have been calculated to mislead the jury, and, as we think, clearly erroneous.

The true measure of damages, in this case, was the value of the use of that portion of the machinery which Stadden had contracted to furnish, and which, by reason of his failure to do, Mann was unable to enjoy. Nor is there any such difficulty in ascertaining what the damages in such case would be, as has been imagined. The value of the use of a run of stone in a mill is as easily ascertained as the value of the use of the whole mill, and in an action to recover for the use and occupation of a mill, we do not apprehend that there would be any difficulty in arriving at the proper amount to be recovered. It would not be necessary in such a case to inquire, as has been supposed, the price of wheat, or what might or might not have been made by the lessee, but what would be a reasonable rent for the premises, would be the only subject of inquiry. So in this case. Mann agreed to pay $1,700 a year, for the use and occupation of a mill, which Stadden agreed to alter, so that it should have four run of stone, instead of two; the additional ones to be equal to the two first. Instead of doing this, he so makes the improvements that one run of stone is useless, without an expenditure of $120, upon the wheel and bolt, by the lessee. There can be no question that Mann was not compelled to make that expenditure, and that he was entitled to recover from Stadden's estate, not speculative damages, such as the loss of profits which he might have suffered in consequence of not having the use of one of the runs of stone, but the value of its use, that is, what it

would have rented for during the time, and also the immediate damages resulting from the defective bolt.

The instruction given to the jury was not very specific, and was, perhaps, objectionable on that account, as not laying down any particular rule, by which the jury were to be governed in assessing damages. But the instruction contains a proposition that is strictly legal; and the giving an abstract proposition of law as an instruction to a jury is no error.

The whole evidence not being in the record, we cannot determine what the recovery should have been, nor upon what basis the jury acted in assessing damages. The contrary not appearing, the presumption of law is, that they adopted the correct rule; and as the Circuit Court committed no error in giving or refusing instructions, its judgment must be affirmed.

*Judgment affirmed.*