RICHARDSON v. LAWLER.

No. 34099. May 15, 1951.

*231 P. 2d 671.*

Logan, Cummins & Oerke, Lawton, for plaintiff in error.

Walter Hubbell and Gordon W. Coker, Walters, for defendant in error.

CORN, J. Plaintiff brought this action to recover damages for breach of contract for sale of an automobile. The petition alleged that August 8, 1946, plaintiff signed the following contract with defendant:

"Contract to Purchase.

"This is to certify that I have this 8th day of August, 1946 deposited with the Richardson Motors $50.00 for delivery of

    1st. Choice Fordor Super Dlx.

    2nd. Choice Tudor Super Dlx.

"It is understood that this car will be delivered in accordance with the orders originally taken less any of those who may have cancelled their orders in the mean time.

              "s/ C. W. Lawler.
"Richardson Motors.
"By Clyde C. McClenny. /s."

Further, that on June 28, 1948, defendant notified plaintiff the automobile was ready for delivery, and the following day plaintiff went to defendant's place of business to pay for and receive the car; the purchase price was $1,936.88, less the deposit, and plaintiff then gave defendant checks for the required amount, which defendant accepted; that the conditions of the contract were fully performed and plaintiff thereupon was entitled to delivery of the car; that defendant refused to deliver the automobile to plaintiff unless he would sign another agreement relating to future sale of the car purchased, which plaintiff refused to do. Being unable to purchase a like automoible at Temple, plaintiff found the price in the open market at the nearest point (Lawton) to be $3,200; that on October 6, 1948, he was able to purchase a car in the open market at Temple for $2,725. Plaintiff sought damages for the difference between the contract price and the price he was forced to pay; for $495 damages for loss of use of the car for a period of 99 days, and interest on the deposit from the date thereof.

Defendant answered by general denial, and further answered that if any contract had existed, same had been waived, abandoned and rescinded by mutual agreement, in that upon being notified that he had a choice of two automobiles defendant had available the plaintiff declined to purchase either; same thereafter were sold to other buyers and plaintiff advised his name had been removed from waiting list and was tendered back his deposit, which tender was refused. Plaintiff replied by a general denial.

The evidence introduced at the trial established substantially the following facts: After signing the contract, plaintiff's place on the waiting list was reached about March 1, 1948, and he was notified his car had arrived. Although the evidence was conflicting as to the reason for so doing, plaintiff did not accept delivery of this car. Plaintiff's testimony was that defendant requested that plaintiff allow this car to be sold to another party, and that he could wait and receive a 1949 model in the next shipment, which plaintiff agreed to do. This evidence was corroborated by two witnesses, who testified that defendant advised them plain-

tiff was not going to take the 1948 model, but intended to wait for a new model. The automobile listed for plaintiff admittedly was sold to the individual as testified to by plaintiff. About June 27, 1948, plaintiff learned defendant had received a shipment of cars. The following day he called on defendant and was advised his car would be ready the next day after the accessories were installed. When he returned defendant was not present, but his brother (bookkeeper) handled the matter, calculated the total price less the deposit, and made out two checks, which plaintiff and his son signed and handed to the bookkeeper, who proceeded to make out the invoice and title papers. Before completion the bookkeeper handed plaintiff a notarized paper to sign (referred to by defendant as a resale agreement) which was as follows:

"Richardson Motors
"Your Ford Dealer

"There Is a Ford in Your Future

"Phone 178            P. O. Box 218

"Temple, Oklahoma
"June 29, 1948.

"Richardson Motors,
"Temple, Oklahoma.

"I, C. W. Lawler, do hereby upon oath swear that I will not dispose or sell one 8 cyl. Custom Fordor automobile, Motor No. 98Ba 30773 to any one except back to the Richardson Motors, consideration not to exceed purchase price as of this date, and to six months thereafter. Purchase price being $1,936.00.88.

"C. W. Lawler

"Subscribed and sworn to before me a Notary Public this 29 day of June, 1948.

"My commission expires Dec. 26, 1951.
"(SEAL)

"(Signed)   Allen Richardson."

Plaintiff refused to sign the agreement and defendant's bookkeeper refused to deliver the car. At that time,

and on the following day, the parties carried on a considerable discussion relative to delivery of the car. Both parties testified that plaintiff's refusal to sign the resale agreement was the reason defendant refused to deliver plaintiff an automobile. The present action resulted from defendant's refusal to deliver this car to plaintiff.

There was further testimony that plaintiff was unable to find a like car on the market at a nearer point than Lawton, Oklahoma, and that the advertised price was $3,200; a "used car" dealer testified the market value of such a car in June, 1948, was from $3,000 to $3,200, although he admitted he had neither bought nor sold such an automobile during that month. Plaintiff's evidence further established that he purchased a similar automobile in December, 1948, from a "used car dealer," for $2,725.

The case was tried to a jury and a verdict was returned in plaintiff's favor for $788.12, the difference between the contract price and the price plaintiff had to pay in the open market, and for refund of the $50 deposit, with interest upon both items. Judgment was rendered upon the jury's verdict.

Three propositions are asserted as grounds for reversal of this judgment, the first of which is that the trial court erred in refusing to sustain defendant's demurrer to the evidence. In this connection defendant insists that any contractual relationship between the parties terminated on March 1, 1948, the date defendant offered plaintiff an automobile which he declined to purchase.

The evidence was conflicting upon the question of whether plaintiff refused to accept a car. Plaintiff denied this, or that defendant tendered back his deposit, and testified that he agreed to allow this car to be sold to another party, with the understanding he should receive the first 1949 model received by defendant. There was other testi-

mony tending to corroborate plaintiff's testimony. The evidence was sufficient to present a controverted question of fact as to whether there was an agreement to rescind the contract, or whether it was understood and orally agreed that the date specified for delivery should be extended. The defendant's evidence refutes any theory of rescission by mutual agreement. The bookkeeper testified plaintiff was notified in June, 1948, that there was a car ready for delivery. Parties competent to contract may as validly agree to rescind a contract as to enter into the original agreement. Reliance Life Ins. Co. v. Thayer, 84 Okla. 238, 203 P. 190. And, the rights acquired under a contract may be abandoned or relinquished by conduct clearly indicating such intention. Sinclair Refg. Co. v. Roberts, 201 Okla. 358, 206 P. 2d 193. Not only does the evidence fail to establish abandonment or rescission of the contract by mutual agreement, but the defendant's evidence refutes any theory of mutual rescission. After signing the original agreement defendant retained plaintiff's deposit until the disagreement in June, 1948. The further testimony showed that defendant notified the plaintiff in June, 1948, that there was a car ready for delivery to plaintiff. The jury properly found that defendant had failed to establish a mutual abandonment of the contract.

Defendant further insists that under 15 O.S. 1941 §237, the written contract could be altered only by a contract in writing, or by an executed oral agreement. However, the evidence herein clearly establishes that the parties agreed orally to alter the terms of the original contract, by extending the date specified for delivery of an automobile to plaintiff, and acted upon such agreement as above stated. The verdict of the jury settled this issue.

The second contention is that the testimony as to the market value of a like automobile in June, 1948, was hearsay and should have been excluded. This argument is without substantial merit. The evidence established the sale price of the car in June, 1948. There was evidence establishing the impossibility of finding this type of automobile in the vicinity, while the price in the nearest open market was $3,200, and there was corroborative testimony upon this feature. However, plaintiff did not purchase a car until December, and at that time purchased in the open market at a substantially lower figure than the evidence showed the market value to have been at the earlier date. Inasmuch as the jury's verdict was based upon the price plaintiff finally paid in the open market, we are unable to see in what manner defendant was aggrieved by the admission of evidence tending to establish a higher market value. Most recently, in Fortner v. Wilson, 202 Okla. 563, 216 P. 2d 299, we recognized that the inflated prices charged for automobiles in the "gray market" constituted evidence of the value in the open market.

The value of the automobile at the date of breach of the contract was established, as well as the price plaintiff was forced to pay in the open market for such a car. In such instances the rule for determining the measure of damages is found in Syllabus 2 of W. T. Ferguson Lbr. Co. v. Hiawatha Lbr. Co., 105 Okla. 193, 232 P. 67.

"The damages resulting from the breach of a sales contract for the sale of a commercial commodity are ascertained by arriving at the difference between the contract price and the price which must be paid by the purchaser for a like commodity in the open market at the place specified for delivery. If the commodity may not be had in the open market at the place specified for delivery, then the nearest market must be used as a basis for computation, plus the transportation charges from such point to the place specified for delivery."

Also, see Gustafson & Spencer, Inc., v. Bell Oil & Gas Co., 106 Okla. 229, 233 P. 708.

488

The final contention is that the trial court erred in refusing to admit in evidence the "resale agreement" defendant sought to require plaintiff to sign. It is defendant's theory that such agreement was pleaded by plaintiff, and so should have been admitted in evidence for the jury to consider in determining whether this was reason for plaintiff to refuse to accept the automobile.

The petition discloses that plaintiff relied entirely upon the existence of a contract, the terms and conditions of which he had fully performed, entitling him to receive the car, but that defendant refused to deliver same unless plaintiff entered a further contract concerning future sale of the car. Contrary to the argument made by defendant, plaintiff's petition raised no issue based upon the resale agreement, but merely alluded thereto in stating the manner in which defendant had breached the contract. This agreement formed no part of the written contract, and was not mentioned or included in the oral agreement. Neither was it mentioned to plaintiff until such agreement was fully executed by plaintiff's acceptance of and payment for the car which defendant agreed to deliver. By defendant's own testimony the resale agreement represented a policy he was beginning concurrently with the sale of his 1949 model automobiles. Plaintiff's action was brought solely to recover damages for breach of the contract, in defense to which defendant raised the issue of the lack of existence of any contract. No issue was raised making it necessary for plaintiff to excuse his refusal to accept the automobile. We can conceive of no theory under which the resale agreement, in effect an entirely new contract, would be admissible in an action brought to recover damages for breach of an entirely separate contract.

Judgment affirmed.

ARNOLD, C.J., LUTTRELL, V.C.J., and WELCH, GIBSON, HALLEY, and JOHNSON, JJ., concur.